**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| SHURWEST, LLC ) | CASE NO.5:19-cv-00180_REW |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE ROBERT E. WIER |
| vs. ) | |
| ) | |
| CAROLYN HOWARD, ) | **ANSWER AND COUNTERCLAIM** |
| ) | |
| Defendant. ) | |
| ) | *Jury Demand Endorsed Hereon* |
| ) | |

Defendant Carolyn Howard ("Ms. Howard" or "Defendant"), by and through counsel, and for her Answer to the Complaint brought by Plaintiff Shurwest, LLC ("Plaintiff" or "Shurwest") states as follows:

## I.  SUMMARY

1.     In response to Paragraph 1 of the Complaint, Ms. Howard admits that Shurwest filed a Complaint for declaratory judgment. Ms. Howard denies the other allegations in Paragraph 1 of the Complaint. Further answering, Ms. Howard states that this declaratory judgment action is nothing more than an attempt by Shurwest to beat Ms. Howard to the courthouse for its role in the marketing, sale, and/or facilitation of the sale of Structured Note Annuities ("Structured Notes") offered through non-party Future Income Payments, LLC ("FIP"). It speaks volumes about Shurwest's business practices that it would host Ms. Howard at *its corporate headquarters* and present the FIP Structured Notes to her as "no risk" products vetted by Shurwest, have employees of Shurwest communicate with Ms. Howard *on their Shurwest email accounts* about FIP, have employees of Shurwest

facilitate information and purchases of FIP Structured Notes through their *Shurwest email accounts*, have employees of Shurwest provide Ms. Howard with an Agreement expressly listing Shurwest as the "Referral/Marketing Group" connected with the FIP Structured Notes, and have employees of Shurwest employees act as the point of contact once FIP began to experience problems and stopped payments to its investors. The employees of Shurwest involved in this conduct included high-ranking employees, including the company's *National Sales Director* of the company's life insurance division. Given these facts, it is beyond comprehension how Shurwest can claim it was not involved in the marketing or sale of FIP Structured Notes, how it could claim it did not owe Ms. Howard a duty of care, or how it could blame Ms. Howard, the victim of investment fraud, for investing in a product that Shurwest itself represented to her as "no risk" investments that were vetted through Shurwest's "industry-leading" team.

## II. <u>PARTIES</u>

2.     In response to Paragraph 2 of the Complaint, Defendant denies the allegations for lack of knowledge. Further answering, Ms. Howard states that Shurwest held itself out to be an Independent Marketing Organization ("IMO") for FIP. In this capacity as IMO, Shurwest marketed FIP's Structured Notes as one of the many products Shurwest vetted through a comprehensive due diligence process. Insurance agents and/or investment advisors like Ms. Howard relied on Shurwest's product-level due diligence before the insurance agents and/or investment advisors assess the client-level suitability of a product. Ms. Howard was one of the investment advisors/financial planners targeted by Shurwest and someone who relied on Shurwest's representations about the FIP Structured Notes to purchase them herself and in recommending them to a client.

3.      In response to Paragraph 3 of the Complaint, Defendant admits she maintains a residence in Kentucky where she spends time throughout the year. The 219 E. High St. address set forth in the Complaint is the address for Ms. Howard's Kentucky office where she works as a certified financial planner. Whether service is proper is a legal conclusion to which no response is necessary, but to the extent a response is required, Defendant denies said allegation.

### III. JURISDICTION AND VENUE

4.      Paragraph 4 of the Complaint consists solely of legal conclusions for which no response is required. To the extent a response is necessary, jurisdiction in this court is admitted.

5.      Paragraph 5 of the Complaint consists solely of legal conclusions for which no response is required. To the extent a response is necessary, venue in this court is admitted.

### IV. FACTUAL BACKGROUND

6.      In response to Paragraph 6 of the Complaint, Defendant admits that Shurwest serves as an IMO, and states that it-in-fact served as an IMO for the FIP Structured Notes at issue in this case. As evidence of such an arrangement, in February 2017, after returning from a marketing visit to Shurwest's headquarters in Arizona, Plaintiff's employees Melanie Schulze-Miller and Nick Johnson emailed Ms. Howard, using their Shurwest email accounts, for the purpose of signing Ms. Howard up as a "Producer" for FIP. The Producer Marketing Agreement Ms. Schulze-Miller and Nick Johnson sent Ms. Howard, using their Shurwest emails, listed Shurwest as the "Referral/Marketing Group." Defendant admits that Shurwest provided Ms. Howard product information about FIP's Structured Notes in its capacity as an IMO and specifically provided Ms. Howard with due diligence materials

3

about FIP's Structured Notes as an inducement to purchase and/or recommend the FIP Structured Notes. Further answering, Shurwest represented to Ms. Howard that the FIP Structured Notes were "safe" and "no risk" investment. Defendant denies the remaining allegations in Paragraph 6.

7.      In response to Paragraph 7 of the Complaint, Defendant admits she works as a certified financial planner. Further responding, Defendant states that any statements made on her website speak for themselves, and denies the allegations contained in Paragraph 7 of the Complaint only to the extent they are inconsistent with written statements made on Ms. Howard's website.

8.      In response to Paragraph 8 of the Complaint, Defendant admits she holds a Series 63 and Series 65 license. Further responding, the remaining allegations contained in Paragraph 8 of Plaintiff's Complaint consist solely of legal statements and conclusions to which no response is necessary. To the extent a response is required, they are denied.

9.      In response to Paragraph 9 of the Complaint, Shurwest has failed to attach the "signed paperwork" or "agreement" referenced in the Complaint and therefore Defendant is unable to admit or deny the allegations.

10.     In response to Paragraph 10 of the Complaint, Defendant admits that this lawsuit is about Shurwest's involvement with FIP's Structured Notes. Shurwest, as a self-proclaimed "industry leading" IMO, lent credence to the FIP's Structured Notes, and provided due diligence materials to Ms. Howard and assured Ms. Howard of the product's legitimacy, both for her own personal investment and for potential recommendation to her client(s). Defendant denies the remaining allegations in Paragraph 10.

11.     In response to Paragraph 11 of the Complaint, Defendant denies the allegations for lack of knowledge. Further answering, Ms. Howard states that Ms. Schulze-

4

Miller was one of the Shurwest employees who introduced her to the FIP Structured Note—during a meeting at the Shurwest's corporate headquarters—around February of 2017. Not only did a Shurwest employee market these FIP products on Shurwest property, but Shurwest employees continued to communicate with Ms. Howard after the foregoing meeting—on their Shurwest email accounts, clearly in their capacities as employees of Shurwest—continued to market the FIP Structured Notes, continued to facilitate the sale of FIP Structured Notes, and continued to act as a point of contact for FIP through their Shurwest email accounts. While Plaintiff attempts to distance itself from the actions of employees like Ms. Schulze-Miller, Ms. Schulze-Miller was a Shurwest employee and Shurwest held her out as one of the company's *National Sales Director*. Her actions were performed within the course and scope of her employment with Shurwest, with the actual or apparent authority of Shurwest, and her actions relative to the FIP Structured Notes were known or should have been known to Shurwest.

12.     In response to Paragraph 12, Ms. Howard admits that Nick Johnson was another one of Shurwest's employee involved in marketing and communicating with Ms. Howard about the FIP Structured Notes. Like Ms. Schulze-Miller, Mr. Johnson communicated with Ms. Howard in his capacity as an employee of Shurwest and communicated with Ms. Howard on his Shurwest email account. Defendant is without information sufficient to admit or deny the allegations regarding Ms. Schulze-Miller or MJSM Financial LLC.

13.     In response to Paragraph 13, Defendant denies the allegation that Nick Johnson was Ms. Howard's Shurwest contact only for legitimate products and used MSJM for FIP Products; Ms. Howard understood their marketing of the FIP Structured Notes to be through Shurwest, as employees of Shurwest.

14.    In response to Paragraph 14, Defendant admits that she recommended the FIP Structured Notes in reliance on Shurwest's due diligence and representations about FIP's Structured Notes. Defendant admits that Mr. Johnson—as an employee of Shurwest and through his Shurwest email account—communicated with Ms. Howard about the FIP Structured Notes. Defendant denies any further allegations contained in Paragraph 14

15.    In response to Paragraph 15 of the Complaint, Defendant denies the allegations. Further answering, employees of Shurwest met with Ms. Howard in the corporate office of Shurwest to specifically pitch the FIP Structured Notes as a product vetted and offered by Shurwest and employees of Shurwest, including the company's National Sales Director, communicated information about FIP through Shurwest email accounts, which expressly listed their employment status with Shurwest and gave the clear impression to Ms. Howard that the employees were acting on behalf of Shurwest.

16.    In response to Paragraph 16 of the Complaint, Defendant denies the allegations. Ms. Howard relied on the false and incomplete representation made by Shurwest, including Ms. Schulze-Miller and Mr. Johnson, and the alleged product-level due diligence completed by Shurwest in assessing the validity of the FIP Structured Notes for herself and her client.

17.    In response to Paragraph 17 of the Complaint, Defendant denies the allegations. Ms. Howard relied on the false and incomplete representation made by Shurwest, including Ms. Schulze-Miller and Mr. Johnson, and the alleged product-level due diligence completed by Shurwest in assessing the validity of the FIP Structured Notes for herself and her client.

18.    In response to Paragraph 18 of the Complaint, Defendant admits that she invested more than $600,000 in the FIP Structured Notes in reliance on the alleged due

diligence and false/inaccurate representations made by Shurwest. Defendant denies for want of knowledge the allegation as to whether Shurwest received any financial benefit from her purchase of the FIP Structured Notes.

19.     In response to Paragraph 19 of the Complaint, Ms. Howard was unaware that "FIP began unraveling" at the time she invested $600,000; she obviously would not have invested $600,000 into the FIP Structured Notes had she known the company was "unraveling." She did so in reliance on the representations made by Shurwest about the FIP Structured Notes and representations about FIP as a company. Defendant denies the remaining allegations for lack of knowledge.

20.     In response to Paragraph 20 of the Complaint, Defendant is without information sufficient to admit or deny the allegations related to what other people expected or thought about FIP. Further answering, the Shurwest employee who represented the FIP Structured Notes as "no risk" and as a safe and reliable source of income was, in her own words, "blown away" about unraveling of FIP, according to Ms. Schulze-Miller's April 20, 2018 email—sent from her Shurwest email account. Defendant denies the remaining allegations.

21.     In response to Paragraph 21 of the Complaint, Defendant is pursuing Shurwest in this action due to its role in introducing her to the FIP Structured Notes and its role in providing false and/or inaccurate and/or incomplete information about the FIP Structured Notes. Further answering, Defendant admits that she was sued by Walmsley due to FIP. Defendant denies the remaining allegations.

22.     In response to Paragraph 22, Defendant admits that she sent Shurwest a demand letter outlining Shurwest's role in introducing her to the FIP Structured Notes. Defendant further admits that Shurwest did not respond to her letter, except to file this

lawsuit against her before she could file a lawsuit against them. Further answering, Ms. Howard explained in her letter to Shurwest that it played a key role in introducing her to the FIP Structured Notes. Ms. Howard further explained that she communicated with various employees of Shurwest at the company's headquarters in Scottsdale, Arizona and subsequently through Shurwest email accounts. Ms. Howard further explained that the Shurwest employees represented the FIP Structured Notes as "no risk" and Shurwest employees continued to communicate with her through their Shurwest email accounts about FIP's Structured Notes. What is nonsense is the allegation that Ms. Howard invested $600,000 in FIP Structured Notes and lost $500,000 due to "her greed." Ms. Howard trusted and relied upon the reputation of Shurwest, trusted and relied upon the representations made by Shurwest about FIP's Structured Notes being "no risk" and vetted as a reliable income producing investment.

23.     In response to Paragraph 23 of the Complaint, Shurwest promoted FIP's Structured Notes, made various misrepresentations about the FIP Structured Notes, was listed as the "Referral/Marketing Group" for the FIP Structured Notes, and misrepresented the nature of the due diligence conducted into the company and structured notes. Ms. Howard relied on the information provided to her by Shurwest in purchasing the FIP Structured Notes for herself and in recommending the FIP Structured Notes to a client.

## V.  REQUEST FOR DECLARATORY JUDGMENT

24.     Paragraph 24 of Plaintiff's Complaint consists solely of legal conclusions for which no response is necessary, to the extent a response is required, the allegations are denied.

25.     Paragraph 25 of Plaintiff's Complaint consists solely of legal conclusions for which no response is necessary, to the extent a response is required, the allegations are denied.

26.     Defendant denies the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     Defendant denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.

## VI. PRAYER

28.     Defendant denies Plaintiff Shurwest is entitled to the relief sought.

29.     Defendant denies any all other allegations in Plaintiff's Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

1.     Plaintiff has failed to state a claim upon which relief may be granted.

2.     Plaintiff's claims fail for lack of subject matter jurisdiction.

3.     Plaintiff's claims are barred by estoppel, waiver, and/or laches.

4.     Plaintiff's claims fail for failure of service and/or insufficiency of process.

5.     Plaintiff's claims are barred by promissory estoppel.

6.     Plaintiff's claims are barred by equitable estoppel.

7.     Plaintiff's claims are barred by equity.

8.     Plaintiff's claims are barred by consent and/or acquiescence.

9.     Plaintiff's claims are barred by ratification.

10.     Plaintiff's claims are barred by the doctrine of unclean hands.

11.     Defendant reserves the right to assert additional affirmative defenses as they are discovered.

WHEREFORE, having fully answered, Defendant prays Plaintiff's Complaint be dismissed with prejudice at Plaintiff's costs.

Respectfully submitted,

*/s/ Kenneth L. Finley*
Kenneth L. Finley, Esq.
**Reminger Co., L.P.A.**
333 West Vine Street, Suite 1670
Lexington, KY 40507
T: (859) 233-1311
F: (859) 233-1312
Email: kfinley@reminger.com

*Counsel for Defendant Carolyn Howard*

## JURY DEMAND

Defendant hereby demands a trial by jury of the within matter with the maximum number of jurors permitted by law.

*/s/ Kenneth L. Finley*
Kenneth L. Finley, Esq.

## COUNTERCLAIM AGAINST SHURWEST, LLC

Carolyn Howard ("Ms. Howard"), by and through counsel, and for her Counterclaim against Shurwest, LLC ("Shurwest") states as follows:

1.      Defendant hereby incorporates the allegations contained in Plaintiff's Complaint by reference not for the purpose of admitting said allegations, but to provide context for this Counterclaim.

2.      Ms. Howard hereby incorporates the above Answer and allegations raised in response to Plaintiff's Complaint by reference as if fully stated herein.

### PARTIES

3.      Carolyn Howard is an individual who maintains a home and spends a significant amount of time at 204 Ellerslie Park Boulevard in Lexington, Kentucky 40515 and operates a business as a certified financial planner in Lexington, Kentucky. She maintains a permanent residence at 4526 Lakecrest Place, in Sarasota, Florida 34233.

4.      Plaintiff Shurwest, LLC, is an Arizona Limited Liability Company, registered with the Kentucky Secretary of State as a Foreign Limited Liability Company, formerly a corporation, with its principal place of business at 17550 N. Perimeter Drive, Ste. 300, Scottsdale, Arizona 85255. At all times relevant hereto, Shurwest was in the business of marketing and selling life insurance, annuities, securities, and other investments to both consumers and insurance/investment professionals. Specifically, Shurwest engaged in the marketing of structured notes offered by Future Income Payments, LLC ("FIP") to Ms. Howard for her own personal investment and to recommend to her client(s).

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different or foreign states.

6.     This Court has personal jurisdiction over this matter pursuant to Kentucky's long arm statute *Ky. Rev. Stat. Ann. § 454.210* by *inter alia*, contracting to supply services or goods in this Commonwealth, causing tortious injury by acts and/or omissions in this Commonwealth, and causing tortious injury in this Commonwealth by acts and/or omissions outside this Commonwealth where it regularly does or solicits business and engages in a persistent court of conduct, and derives substantial revenue from goods used or consumed and services rendered in this Commonwealth.

7.     These claims against Shurwest arise from the same business conducted and/or solicited by Shurwest in this Commonwealth, and Shurwest's conduct served to cause harm in the Commonwealth.

8.     Shurwest knowingly marketed, solicited, sold and/or facilitated the sale of the products at issue to Ms. Howard. Shurwest was aware that it was marketing the products at issue in this case to someone conducting business in Kentucky, to a Kentucky resident, and it engaged in substantial communications targeted to an individual residing in Kentucky and operating a business located in Kentucky. Accordingly, personal jurisdiction over Shurwest is proper and comports with the Kentucky long arm statute as well as Constitutional due process.

9.     By marketing the investments at issue to Ms. Howard and/or her client(s), Shurwest's fraudulent and/or tortious conduct caused harm to a Kentucky business and a

Kentucky resident, as well as Ms. Howard's personal and professional reputation in Kentucky.

10.     Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to Ms. Howard's claim against Shurwest occurred here.

11.     As Shurwest is subject to this Court's personal jurisdiction, Shurwest is deemed to reside in this District for venue purposes.

## FACTUAL BACKGROUND
### The Investments at Issue

12.     This matter arises out of Shurwest's involvement in the marketing, sale, and/or facilitation of the sale of FIP's Structured Notes.

13.     The alleged purpose of the FIP Structured Notes was to provide monthly payments over the term of the notes in exchange for a lump sum payment by the investor, which was used to purchase the right to receive individual pension plans. The pension seller would receive a lump sum, and in return, the investor would receive monthly payments with a specified rate of return on their investment.

14.     Shurwest served as an Independent Marketing Organization (IMO) for FIP. In this capacity as IMO, Shurwest marketed these products as being vetting by Shurwest for the purpose of inducing individuals and investment advisors/financial planners to either purchase these products directly and/or recommend them to their clients. Ms. Howard was one of the investment advisors/financial planners targeted by Shurwest. Upon information and belief, Shurwest marketed these products and made the representations as to their legitimacy as set forth herein, despite having knowledge of their impropriety and fraudulent

nature and/or despite failing to conduct adequate due diligence into the Structured Notes in order to accurately market the products.

15.     Around the time Shurwest marketed these Structured Notes, FIP had begun to come under investigation by regulators of various states, including New York, California, Massachusetts, Iowa, Washington and North Carolina, as well as the Consumer Financial Protection Bureau for predatory lending practices. By late April 2018, due to these regulatory actions being taken against FIP, the company stopped making distributions and investors like Ms. Howard could not withdraw their money. In other words, investors such as Ms. Howard were left holding the bag with large portions of her savings lost.

**Shurwest Marketed the Structured Notes to Ms. Howard and Induced Her to Invest**

16.     Carolyn Howard is a licensed insurance agent and a certified financial planner who lives and works in Lexington, Kentucky. In her role as a certified financial planner, Ms. Howard had a pre-existing relationship with Shurwest as an IMO, which pre-dated their marketing of the FIP Structured Notes at issue to her.

17.     Ms. Howard was first introduced to the FIP Structured Notes in February 2017 by employees of Shurwest, which eventually caused her to invest more than $600,000 of her own money in FIP *and* caused her to recommend the FIP structured notes to one of her clients.

18.     On or about February 9, 2017, while on a marketing trip to Shurwest's headquarters in Arizona, Ms. Howard met with Shurwest employees to discuss insurance and/or securities products that Shurwest vetted and recommended for Ms. Howard/Ms. Howard's clients. During this meeting, employees of Shurwest presented the FIP Structured Notes as products Shurwest had thoroughly vetted and recommended as safe and reliable products that would provide a consistent stream of income. The Shurwest employees

confidently represented them as products with "no risk" given their due diligence into the company and products.

19. Shurwest did not inform Ms. Howard of any regulatory issues with the FIP Structured notes or the structure of the FIP business model. In fact, employees of Shurwest represented that the FIP Structured Notes had been reviewed and approved by the Federal Government and several (over 15) states, that the Federal Government had reviewed the FIP program from a legal perspective and had found no issues with it, that the FIP structure was reviewed and approved through a legal opinion letter, among other things.

20. Shurwest and/or the employees of Shurwest made these representations to Ms. Howard after FIP had been the subject of various state and federal regulatory actions, which called into question the legality of the FIP business structure. Due to its role in conducting product-level due diligence, Shurwest knew or should have known about these regulatory actions and failed to provide Ms. Howard with accurate information about FIP and its Structured Notes.

21. Following her in-person meeting with Shurwest's sales and marketing representatives, Ms. Howard and Shurwest employees, Mr. Johnson and Ms. Schulz-Miller, engaged in extensive communication for the following months, which resulted in Ms. Howard entering into a Producer Marketing Agreement for FIP, which identified Shurwest as the IMO.

22. Shurwest employees then provided Ms. Howard with additional information on the FIP investments, including various documents constituting "due diligence." Such documents were provided with the specific intent to induce Ms. Howard that the Structured Notes were legitimate and safe investments for both her and her clients.

23.     As a direct result of Shurwest's representations and marketing of the FIP Structured Notes, Ms. Howard was induced to personally invest more than $600,000 into the FIP Structured Notes. Ms. Howard also recommended the FIP Structured Notes to one of her clients.

24.     From February 2017 through May 2017, Shurwest's employees were in contact with Ms. Howard concerning the FIP Structured Notes. Both Ms. Howard's personal investment as well as that of her client were made in April 2017. Employees of Shurwest helped process these investments in FIP, and Mr. Johnson indicated to Ms. Howard that he was in direct communication with FIP. These communications continued into 2018 as Mr. Johnson and Ms. Schulze-Miller continued to facilitate information about the FIP Structured Notes to Ms. Howard and continued to act as Ms. Howard's intermediary regarding all issues pertaining to FIP. At no point during any of these communications did a Shurwest disclose or warn Ms. Howard about these legal troubles FIP had found itself in.

25.     Ms. Howard had no knowledge or suspicion of any issues with FIP until early 2018 when she became aware that FIP stopped making its monthly payments pursuant to the terms of the FIP Structured Notes. In this regard, in April 2018, FIP's President Scott Kohn announced FIP had ceased the majority of its operations and would make no further payments to investors as a result of the ongoing regulatory actions and litigation FIP faced. Notice of this announcement was sent not only to Ms. Howard but was also directed toward Shurwest employees who had marketed the products on FIP's behalf.

26.     As a result, the "safe" and "risk-free" investments promoted by Shurwest have caused substantial losses and damages to Ms. Howard.

## CLAIMS FOR RELIEF
### DAMAGES

27.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

28.     As a direct and proximate result of Shurwest's improper and deceptive marketing of the FIP Structured Notes, Ms. Howard has sustained losses of more than $500,000.

## COUNT ONE
### FRAUD

29.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

30.     As alleged above, Shurwest committed fraudulent acts against Ms. Howard both by affirmative misrepresentations and/or by intentional concealment through the representations made to Ms. Howard during the in-person meeting in February 2017 and through its subsequent representations to Ms. Howard about FIP and the features of the FIP Structured Notes.

31.     Shurwest fraudulently misrepresented that the FIP Structured Notes carried "no-risk" during Ms. Howard's trip to meet with their sales and marketing team in February 2017 and provided materially misleading/deficient "due diligence" materials on FIP.

32.     Shurwest had a duty to conduct reasonable due diligence into the FIP Structured Notes in the context of its relationship with Ms. Howard, and either recklessly failed to do so or intentionally misrepresented the facts known about FIP to induce her to invest or recommend the FIP Structured Notes.

33.     Shurwest knew or reasonably should have known that its conduct or the conduct of its employees was fraudulent.

34.     Shurwest's conduct described herein is in violation of, *inter alia*, *Kentucky Rev. Stat. Ann. §292.320*(1)(a)-(c).

35.     Given Shurwest's position as an IMO, especially as a self-proclaimed industry leading IMO as provided in its Complaint, Ms. Howard was justified in relying on Shurwest's misrepresentations about FIP's Structured Notes.

36.     Shurwest's fraudulent concealment and affirmative misrepresentations directly and proximately caused Ms. Howard's harm.

37.     Shurwest engaged in these actions described herein intentionally with malice, oppression, and fraud, and/or recklessly engaged in the marketing of these securities with no regard to the rights of Ms. Howard. Accordingly, Shurwest is liable for Ms. Howard's damages as well as punitive damages based on its employees' and agents' conduct.

## COUNT TWO
### CONSTRUCTIVE FRAUD

38.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

39.     Shurwest occupied a position of trust with respect to Ms. Howard, for, among other things, holding itself out as a qualified IMO of the FIP Structured Notes in order to induce her and/or her clients to invest.

40.     As previously alleged, Shurwest committed multiple fraudulent acts against Ms. Howard through both affirmative misrepresentations and by intentional and/or reckless concealment of material information.

41.     Shurwest concealed the potential risks associated with the Structured Notes, including regulatory issues, and affirmatively misrepresented the safety, reliability, and suitability of the Structured Notes.

42.     Shurwest knew or should have know that its conduct was fraudulent.

43.     Shurwest's fraudulent concealment and misrepresentation proximately caused Ms. Howard's harm.

44.     Shurwest engaged in its actions by and through its employees and agents with malice, oppression, and intent to defraud, accordingly it should be held liable for both Ms. Howard's damages as well as punitive damages.

**COUNT THREE**
**NEGLIGENT MISREPRESENTATION**

45.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

46.     As set forth herein, Shurwest made affirmative misrepresentations to and intentionally and/or recklessly concealed material information from Ms. Howard in connection with their business relationship.

47.     To the extent that it is determined that Shurwest did not possess the specific intent to defraud Ms. Howard, then those misrepresentations described herein were made negligently and without concern for the truth.

48.     Shurwest knew or should have known that it had misrepresented material information to Ms. Howard, which induced her to invest and induced her to enter into a Producer Marketing Agreement for the Structured Notes and recommend the FIP Structured Notes to her client.

49.     Shurwest, in its role as IMO and as a marketer of the FIP Structured Notes had a duty to refrain from misrepresenting material aspects of the investments.

50.     Shurwest intended for Ms. Howard to rely on its representations so that she would invest in the Structured Notes and continue to market them, from which Shurwest would derive substantial profit.

51.     Ms. Howard was reasonable in her reliance on Shurwest's representations.

52.     Shurwest's negligent misrepresentations directly and proximately resulted in Ms. Howard's harm, accordingly it should be held liable for her damages.

### COUNT FOUR
#### NEGLIGENCE

53.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

54.     Shurwest owed a duty of reasonable care to Ms. Howard due to its status as her IMO and due to Ms. Howard relying on Shurwest to perform product-level due diligence on securities, insurance, and other investment vehicles.

55.     Shurwest had a duty to refrain from making any material misrepresentations to Ms. Howard due to their business relationship.

56.     Shurwest breached these obligations through the conduct described above.

57.     Shurwest's breach of its duties owed to Ms. Howard directly and proximately caused her harm.

58.     As a direct and proximate result of Shurwest's misconduct, Ms. Howard sustained substantial monetary, reputational, and emotional harm.

### COUNT FIVE
#### VIOLATION OF KENTUCKY CONSUMER PROTECTION ACT

59.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

60.     Pursuant to *Kentucky Rev. Stat. Ann. §367 et seq.,* Shurwest is subject to Kentucky's Consumer Protection Act.

61.     Kentucky's Consumer Protection Action prohibits "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

62.     By way of the conduct set forth herein, Shurwest has engaged in unfair, false, misleading, and/or deceptive practices in connection with trade and commerce, specifically the marketing of the FIP Structured Notes to Ms. Howard, which is unlawful.

63.     Ms. Howard is entitled to the civil remedies set forth in *Kentucky Rev. Stat. Ann. §292.470, et seq.,* together with punitive damages arising from the intent and maliciousness behind these violations.

64.     Pursuant to Ky. Rev. Stat. Ann. § 367.220 as a result of Shurwest's violation of the Consumer Protection Act, Ms. Howard is entitled to recovery of actual damages together with appropriate punitive damages arising out of the malicious and intentional nature of Shurwest's acts/omissions.

<u>**COUNT SIX**</u>
**NEGLIGENT SUPERVISION**

65.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

66.     Nick Johnson and Melanie Schulz-Miller were employees of Shurwest, acting within the scope of their employment, duties and agency with Shurwest when they made representations to Ms. Howard about the FIP Structured Notes.

67.     Shurwest owes a duty to supervise, train, educate, and manage its agents/employees, including Nick Johnson and Melanie Schulz-Miller.

68.     Shurwest was aware of the conduct of its agents/employees through them conducting meetings at the Shurwest office location and communicating with Ms. Howard through the Shurwest email system, among other things, and Shurwest was aware or should have been aware of Mr. Johnson and/or Ms. Schultz-Miller's marketing and promotion of the FIP Structured Notes.

69.     Shurwest had a common law, statutory and regulatory duty to properly train, supervise, educate, qualify, manage and monitor their employees and agents, including Mr. Johnson and Ms. Schultz-Miller, and to ensure that all due diligence was adequately performed on products recommended by Shurwest and to ensure that all disclosures made to clients were accurate.

70.     Shurwest was negligent and breached its duties pertaining to the training, supervising, educating, qualifying, managing and monitoring of Mr. Johnson and Ms. Schultz-Miller.

71.     As a substantial factor and proximate cause of Shurwest's negligence and breach of its duties as set forth above, Ms. Howard has suffered and incurred the damages as set forth above and is entitled to a judgment against Shurwest for all damages awarded.

## COUNT SEVEN
### RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

72.     Ms. Howard incorporates by reference all preceding and subsequent paragraphs as though fully set forth herein.

73.     Nick Johnson and Melanie Schulz-Miller were employees of Shurwest, acting within the scope of their employment, duties and agency with Shurwest when they made representations to Ms. Howard about the FIP Structured Notes.

74.     Based upon the relationship between Mr. Johnson and Ms. Schulz-Miller, Shurwest is liable for the actions, inactions and omissions of Mr. Johnson and Ms. Schulz-Miller under the legal doctrines of agency, apparent agency, respondeat superior, vicarious liability, derivative liability, indemnity.

WHEREFORE, Defendant Carolyn Howard prays for judgment against Plaintiff Shurwest on her Counterclaim as follows:

1.  Statutory damages as provided in the Kentucky Consumer Protection Act;

2.  Compensatory damages in an amount to be proven at trial, but to exceed $500,000;

3.  Restitution for any amounts in which Shurwest or its employees were unjustly enriched by its conduct;

4.  For pre-judgment interest on all damages at the maximum legal rate;

5.  For punitive damages as provided by *Kentucky Rev. Stat. Ann. §411.184-186.*

6.  For all other relief the Court finds just and equitable.

Respectfully submitted,

*/s/ Kenneth L. Finley*
Kenneth L. Finley, Esq.
**Reminger Co., L.P.A.**
333 West Vine Street, Suite 1670
Lexington, KY 40507
Tele: (859) 233-1311
Facsimile: (859) 233-1312
Email: kfinley@reminger.com

*Counsel for Defendant Carolyn Howard*

## **JURY DEMAND**

Ms. Howard hereby demands a trial by jury of the within matter with the maximum number of jurors permitted by law.

*/s/ Kenneth L. Finley*
Kenneth L. Finley, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2019, the foregoing was filed electronically. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Kenneth L. Finley*
Kenneth L. Finley, Esq.
*Counsel for Defendant Carolyn Howard*